**FILED**

Jan 29 2020

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ s/ TrishaF _____ DEPUTY

NUNC PRO TUNC

Jan 29 2020

1  MARK E. VERNON
2  3714 Merrimac Avenue
   San Diego, CA 92117
3  Tel: (619) 782-2668
   Email: courtside@gmx.us
4
   MARK E. VERNON
5  Plaintiff, In Propria Persona

6

7                **UNITED STATES DISTRICT COURT**

8                **SOUTHERN DISTRICT OF CALIFORNIA**

9  MARK E. VERNON,                    Case No.: 19 CV 2356 JAH-(RRB)

10              Plaintiff,            **VERIFIED COMPLAINT FOR MONEY**
                                      **DAMAGES**
11       v.
                                      **ATTACHED EXHIBIT "A"**
12

13  TESLA ENERGY; TESLA ENERGY
14  OPERATIONS, INC.; SOLARCITY CORP.;
    ROE CORPORATIONS, PARTNERSHIPS
15  OR OTHER BUSINESS ENTITIES 1-10,
    INCLUSIVE,                         **VERIFICATION OF COMPLAINT**
16
                Defendants.           **[DEMAND FOR JURY TRIAL]**
17

18       COME NOW, MARK E. VERNON, individually, in propria persona, hereby brings this action

19  against TESLA ENERGY and TESLA ENERGY OPERATIONS, INC., (registered Oregon

20  corporations) SOLARCITY CORP., and ROE CORPORATIONS, PARTNERSHIPS, OR OTHER

21  BUSINESS ENTITIES 1 through 10, inclusive, (hereinafter, jointly and severally, also referred to as,

22  "Defendants" and/or "TESLA" and/or "SOLARCITY"), based upon  the conduct of the Defendants

23  related to the installation and sale of Solar Photovoltaic Systems ("solar-PV systems") to consumers in

24  the State of California.

25

26

1

**PARTIES**

1.   Plaintiff, MARK E. VERNON, ("Plaintiff") is and, at all times relevant to this verified complaint, was residing in the City and County of San Diego, State of California. Plaintiff is the rightful owner of the property located at 3714 Merrimac Avenue, San Diego, California 92117, hereinafter referred to as the "Subject Property".

2.   The Subject Property was used for the installation of a solar-PV system and was the location of the electrical services that was to be provided by defendants to Plaintiff under a Power Purchase Agreement, hereinafter referred to as "PPA" and/or "Contract" and/or "Agreement".

3.   Defendant, TESLA ENERGY, ("TESLA") is and, at all times relevant to this verified complaint, was a corporate entity registered in the State of Oregon and is a foreign corporation actively engaged in the sale and/or leasing of photovoltaic solar systems or solar-PV systems to residential customers in the State of California.

4.   Defendant, TESLA ENERGY OP, (collectively "TESLA") is and, at all times relevant to this verified complaint, was a corporate entity registered in the State of Oregon and is a foreign corporation actively engaged in the sale and/or leasing of photovoltaic solar systems or solar-PV systems to residential customers in the State of California.

5.   Defendant, SOLARCITY CORP., ("SOLARCITY") is and, at all times relevant to this verified complaint, a foreign corporation actively engaged in the sale and/or leasing of photovoltaic solar systems or solar-PV systems to residential customers in the State of California, with its primary place of business in the City of San Mateo, State of California.

6.   Defendant TESLA assumed the business name along with the contractual affairs of Defendant SOLARCITY, including, but not limited to, its business activities as well as its primary business address on October 13, 2016.

2

7. Defendant SOLARCITY used to be one of the nation's biggest installers of residential solar systems, working independently until its acquisition by Defendant TESLA in 2016.

8. Defendant ROE corporations, partnerships or other business entities 1-10, and each of them, are corporations, partnerships or other business entities whose forms are unknown who have, and are, doing business in the judicial district of the above-captioned court.

9. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendant ROE corporations, partnerships or other business entities 1-10 (inclusive), and each of them, are unknown to Plaintiff at this time and Plaintiff therefore sue said Defendants by such fictitious names. Plaintiff alleges, on information and belief, that each defendant is responsible for the actions herein alleged and Plaintiff will seek leave of Court to amend this Complaint when the names of said defendants have been ascertained.

10. Plaintiff is informed and believes, and thereon alleges, that at all times material hereto and mentioned herein each of the Defendants sued herein (both named and fictitious) were the agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining Defendants and were at all times acting within the purpose and scope of such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego, partnership or employment and with the authority, consent, approval and ratification of Defendant TESLA and each of the remaining Defendants.

## GENERAL ALLEGATIONS

11. At all times mentioned herein, Defendants TESLA and SOLARCITY were engaged in the business of promoting, marketing, distributing, and selling and/or leasing of photovoltaic solar systems ("Solar-PV systems") throughout the State of California, to residential customers

3

like Plaintiff. Defendant TESLA is also a company that sells, installs, finances, and monitors turnkey solar energy systems that convert sunlight into electricity. Its systems, either mounted on a building's roof or the ground, are used by residential, commercial, and government customers.

12. At all times mentioned herein, Defendants main selling point is that Defendants offer renewable energy for less than traditional utility companies. Making consumers feel good about choosing an alternative energy source, and saving money. Defendants represented to consumers that the costs associated with in the installation of Solar-PV systems including the monthly fees are offset by Defendants investment funds. To date, the Defendants claim to have formed more than 20 investment funds and raising more than $1.5 billion dollars from banks and other companies such as Credit Suisse, Google, PG&E Corporation, and U.S. Bancorp. (however, two of those funds, are currently being audited by the IRS).

13. At all times mentioned herein, Defendants depended on federal and state tax rebates and credits obtained by and through consumers like Plaintiff to allegedly lower the "costs" of Solar-PV systems and used these federal and state tax rebates and credits to create incentives for fund investors at the expense of consumers like Plaintiff. For example, the federal government offers a tax credit of 30% to install solar power through 2016. After 2016, the tax credit fell to 10%, a very relevant fact that was not disclosed to consumers like Plaintiff at the time they entered into the PPA or at any time after the Solar-PV systems were installed.

14. At all times mentioned herein, Defendants were engaged in selling electricity to consumers like Plaintiff under a long-term contract --generally customers agree under the PPA to a 20-year term. Customers are either signed up as leases or PPA's. Lease customers pay a fixed monthly rate while the rate for PPA customers depends on the amount of electricity the solar energy system produces. The vast majority of its customers (some 90%) "rent" the solar

4

installations instead of buying them outright, allegedly in order to keep Defendants in control of the product warranty.

15.   At all times mentioned herein, Defendants Solar-PV system has not generated any electricity whatsoever since installed or at any point in time after both parties entered into the PPA on November 5, 2015. In fact, Defendants have materially failed to provide and refused to deliver any Solar-PV system to Plaintiff for over four (4) years, and still refuse to provide a fully operational Solar-PV system --all to Plaintiff's detriment.

16.   Plaintiffs is informed and believes, and thereon alleges that each and every one of the Defendants are responsible in some manner, either by act or omission for the occurrences herein alleged, and that Plaintiff's injuries, as herein alleged, were proximately caused by the conduct of Defendants.

17.   At all times herein mentioned, each Defendant was the co-conspirator, agent, servant, employee, assignee and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the permission and consent of each of the other Defendants.

18.   Plaintiff is informed and believes, and thereon alleges, that Defendants, and each of them, at all material times relevant to this Complaint, performed the acts alleged herein and/or otherwise conducted business in the State of California.

19.   Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendants, and each of them, including without limitation those Defendants herein sued as ROES, were acting in concert or participation with each other, or were joint participants and collaborators in the acts complained of, or were the agents or employees of the others in doing

the acts complained of herein, each and all of them acting within the course and scope of said agency and/or employment by the others, each and all of them acting in concert one with the other and all together.

20. The instant action arises out of the installation of a solar-PV system in which Defendants, each of them, failed to disclose important material information to Plaintiff and/or otherwise made false statements of fact to the Plaintiff regarding the sale of solar-PV system and the electrical services which were to be provided to Plaintiff by the Defendants in a Power Purchase Agreement. This action also concerns Defendants' fraudulent omissions and its unlawful, fraudulent and unfair business acts or practices concerning said solar-PV system and the electrical services never provided. Defendants engaged in a campaign of deceptive conduct and concealment aimed at maximizing the number of customers who would purchase solar-PV systems in order to maximize Defendants' profits, even after Defendant's knew, or should have known, their conduct would cause many of these customers to lose money like Plaintiff should the solar-PV system be installed but non-operational or partially functional or made operational by the Defendant's but no "interconnection date" is made by Defendant's, as promised in the Power Purchase Agreement ("PPA") executed on November 5, 2015.

21. Attached hereto as **Exhibit "A"** is a true and correct copy of the alleged Power Purchase Agreement ("PPA"), electronic version, not fully executed by both parties, and is incorporated herein by the reference. Defendants filed this PPA with San Diego County Recorders Office in order to secure federal and state tax rebates and credits obtained by and through Plaintiff's Solar-PV System even though the "system" was not producing any reusable energy since November 5, 2015, or any other relevant times herein. Defendants have committed consumer fraud.

6

22. At the time Plaintiff agreed to have Defendants install the Solar-PV system, Plaintiff informed Defendants that his roof was in need of repair and needed to be replaced prior to installation. Defendants ignored Plaintiff's notice of the condition of the roof and installed the Solar-PV system anyways. As a result, Plaintiff's roof has been leaking for the past three years and needs to be replaced in order to stop water damage every time it rains. Plaintiff has suffered damages due to Defendants negligence.

23. Also, at the time Plaintiff had interviewed and considered other solar companies offering similar solar systems that promised similar energy saving benefits, however, believed that Defendants would deliver similar energy saving systems. Defendants did not deliver what was promised. As a result, Plaintiff has suffered opportunity loss and loss revenue from the re-sale of electricity back to Plaintiff's utility providers.

24. At all times relevant hereto, Plaintiff is the owner and occupant of the Subject Property. At all times mentioned herein, Defendants used various methods to sell a solar-PV system to Plaintiff including: (a) loan agreement for the solar-PV system; (b) lease agreement of the solar-PV system; (c) Power Purchase Agreement ("PPA") for the solar-PV systems electric; and (d) and outright purchase agreement for the solar-PV system.

25. Defendants visited the Plaintiff's home several times during the sales process in the weeks before Plaintiff entered into the contract with Defendants on November 5, 2015.

26. During the course of the sale of the solar-PV system to the Plaintiff, Defendants showed Plaintiff a calculation using an online tool to demonstrate how Plaintiff would save money by installing a solar-PV system. During the course of the sale of the solar-PV system, Defendants made the following representations or omissions to Plaintiff either orally or through advertising and direct sales as follows:

7

(a) The Plaintiff would be able to save money by installing a solar-PV system;

(b) The Plaintiff would be able to participate in the production and profits by production of electricity;

(c) Plaintiff would receive the same rate or lower for electricity charged by San Diego Gas & Electric ("SDG&E") then Plaintiff's' solar-PV system would feed back into the grid to SDG&E, thus Plaintiff would be able to control and/or offset electricity costs by installing a solar-PV system; and

(e) That Plaintiff would be protected from rising electricity costs by installing solar-PV system and profit from the sale of electricity generated.

.

25.     Defendants website and advertising materials made many of the promises and assurances that were generally made to Plaintiff, as described above. None of the above-stated representations were true. The Defendants Solar-PV system was sold to Plaintiff in a deceptive manner because none of the above-stated representations were true.

26. The solar-PV system was sold to the Plaintiff with assurances that the system would save Plaintiff money and reduce his overall electricity costs as well as profit from the sale of the electricity back to Plaintiff's utility providers. Defendants failed to disclose and, by omission, failed to inform Plaintiff that because Plaintiff's roof was nearly 30 years old and in need of repair at the time the solar-PV system was installed, could substantially affect the value of Plaintiff's home due to the costs of removal and reinstallation.

27. At all times relevant, Defendants sold the solar-PV system to Plaintiff in a false or deceptive manner. During the sale, Defendants represented to Plaintiff that in accepting these

terms he would be able to lower their monthly electricity costs and save money. This was patently false and misleading. The cost from SDG&E was 9 cents, and under the PPA was 15 cents.

28. As a direct and proximate result of Defendants' representations and the conduct alleged herein, Plaintiff agreed to purchase the solar-PV-system from Defendants.

29. Plaintiff reasonably believed, based on the representations contained in the documents Defendants provided to Plaintiff, that he would be able to save money over time by installing the solar-PV-system at Plaintiff's home. However, Defendants failed to disclose and, by omission, failed to inform Plaintiff that the solar-PV-system would never generate electricity due to Defendants failure to deliver a fully operational solar-PV-system or that the solar-PV-system would require "panel upgrades' or that the "interconnection date" was artificial, arbitrary, undisclosed and a conditional term subject to change in the agreement, and that Plaintiff could lose money as a result of such artificial, arbitrary, undisclosed and conditional terms.

30. Plaintiff believed that they would save money by installing a solar-PV system because that is exactly what Defendants intended Plaintiffs to believe.

31. Defendants aggressively sold their solar-PV product in California. Defendants knew, or should have known, that if they sold solar-PV systems in such a manner, promising cost savings along with collateral environmental benefits, their product would be a hugely popular and profitable for Defendants.

32. Defendants also knew, or should have known, that they were selling their product in a false and deceptive manner. While Defendants trumpeted the benefits of solar-PV systems to the public, Defendants knew, or should have known their promise of savings was based on a false promise, and consumers would reasonably rely on the representations of Defendants and consumers

9

would be harmed financially by Defendant failure to keep the promises made or deliver energy services as promised.

33. Defendants failed to disclose and, by omission, failed to inform Plaintiff that the estimated savings provided by Defendants were based upon false or misleading information.

35. The Defendants, intentionally or negligently, failed to disclose and omitted the fact that the truthfulness of the information is, and was, objectively material and necessary for Plaintiff to make an informed decision because such factual information would have revealed the substantial risk, and now reality, that the Plaintiff would lose money as a result of installing the solar-PV system.

36. At all times relevant, Defendants knew or should have known yet failed to disclose that it would be necessary to make "panel upgrades" that would cause the solar-PV system to be non-operational and unable to produce any electricity.

37. This concealed and omitted information was not known to Plaintiff and which, at all times relevant, Defendants failed to disclose and/or actively concealed by making such statements and partial, misleading representations to Plaintiff.

38. Defendants engaged in the unlawful, unfair, fraudulent, untrue and/or deceptive scheme to induce Plaintiff to purchase and install the solar-PV system that would never produce electricity.

39. Defendants unlawful, unfair, fraudulent, untrue and/or deceptive acts and/or practices were committed with willful and wanton disregard for whether or not Plaintiff would, in fact, be able to save money or ever use or produce electric by installing a solar-PY system.

10

## FIRST CAUSE OF ACTION
### NEGLIGENCE
### [All Defendants]

40.  Plaintiff re-alleges, and incorporates by reference every allegation contained in the preceding paragraphs of this Verified Complaint as though set forth herein.

41. The Defendants owed a duty of ordinary care to Plaintiff to provide accurate information to Plaintiff regarding whether they would save money by installing a solar-PV system and a duty of ordinary care to not install the Solar-PV system on a roof in need of repair at the time the Solar-PV system was installed. Plaintiff has suffered further damages by the on-going and continuing roof leaks that has damaged drywall, carpeting and the development of black mold which must be professionally removed after repairs are done to the roof and replacement of the roof itself.

42.  The Defendants breached their duty of ordinary care to Plaintiff by failing to inform Plaintiff that the installed solar-PV system would not function when installed on November 5, 2015 and remain non-operational at all relevant times herein.

43.  The Defendants breached their duty of ordinary care to Plaintiff by failing to inform Plaintiff that the installed solar-PV system would result in substantial losses to Plaintiff, and/or by failing to repair, replace or remove the installed solar-PV system and reinstall a new fully operational  solar-PV system as reasonably expected.

44. The Defendants conduct as described herein is the legal proximate cause of the damages sustained by Plaintiff.

45.  Plaintiff has suffered damages in excess of $50,000.00 as a result of the negligence of the Defendants, each of them.

### SECOND CAUSE OF ACTION
### INTENTIONAL/NEGLIGENT MISREPRESENTATION
### [All Defendants]

46. Plaintiff re-alleges, and incorporates by reference every allegation contained in the preceding paragraphs of this Verified Complaint as though set forth herein.

47. Defendants had a duty to disclose to Plaintiffs and, at all times relevant, failed to disclose and/or concealed material facts by making partial representations of some material facts when Defendants had knowledge of material facts, including but not limited to the fact that the installed solar-PV system would never produce electricity and remain non-operational due to necessary panel upgrades and Defendants refusal to deliver a fully functional solar-PV system.

48. Defendants concealed and omitted information that was not known to Plaintiffs and, at all times relevant, Defendants failed to disclose and/or actively concealed information by making false statements and partial, misleading and/or negligent representations to Plaintiff.

49. Defendants negligently omitted material facts known to them and not reasonably discoverable by Plaintiff concerning Defendants failure to deliver a solar-PV system that produced electricity.

50. Defendants negligently defrauded and/or mislead Plaintiff into believing that he would save money as a result of installing a solar-PV system.

51. The negligently omitted information, as alleged herein, was material to Plaintiff in that, had the information been disclosed, they would not have purchased the solar-PV system.

52. Plaintiff justifiably relied on the information provided to Plaintiff by the Defendants.

53. As a direct and proximate result of Defendants' negligent failures to disclose and their omission of material facts, as alleged herein, Plaintiff has suffered damages which include, but

are not limited to, loss of the monies paid or agreed to be paid for the solar-PV system and the loss of the future financial benefits therefrom.

54. Plaintiff seeks to recover damages based upon a claim of negligent misrepresentation grounded in Defendants' negligent misrepresentations and or negligent concealment of information, as described herein.

55. At all times mentioned, Defendants acted with malice or oppression and each Plaintiff has been subjected to unjust hardship in conscious disregard of their rights, so as to justify an award of exemplary and punitive damages

56. The omitted information, as alleged herein, was material to Plaintiff in that, had the information been disclosed, he would not have purchased the solar-PV system. The Plaintiff justifiably relied on the information provided to the Plaintiff by the Defendants.

### THIRD CAUSE OF ACTION
### BREACH OF CONTRACT
### [All Defendants]

57. Plaintiff re-alleges, and incorporates by reference every allegation contained in the preceding paragraphs of this Verified Complaint as though set forth herein.

58. Plaintiff entered into a written agreement ("PPA") with Defendants to purchase a solar-PV system from the Defendants. The agreement was drafted by Defendants and could not be modified by Plaintiff and was executed electronically and required initials to continue or review, as such Plaintiff did not know what he was initialing and was afforded no opportunity to scroll back to carefully review. If Plaintiff wanted to read the contract in its entirety, Plaintiff was required to provide initials to do so, thus the contract provided to Plaintiff by Defendants was a contract of

13

adhesion. See **Exhibit "A".** The agreement further describes the terms and respective obligations applicable to the parties herein.

59.   The agreement states that Plaintiff is obligated to pay the Defendants for electricity that the solar-PV system produces at a predetermined rate. The Defendants represented to Plaintiff that Plaintiff would be able to offset their electricity costs from production of the solar-PV system by an amount that is commensurate with the amounts Plaintiff is obligated to pay the Defendants for electricity produced by the solar-PV system.

60.   At all times relevant, Defendants knew that the solar-PV system would likely be altered by increasing the size of the system and thus require panel upgrades to produce electricity.

61. At all times relevant, Defendants knew that the delay in installing a solar-PV system that produced electricity would require panel upgrades due to technological advancements in the industry, but mislead Plaintiff into the false belief that he would be able to sell power generated by their solar-PV system at a rate similar to what Plaintiff paid the Defendants for such electricity.

62.  Defendants breached the agreement with Plaintiff by Defendants failure to deliver a solar-PV system that failed to produce any electricity to use or sell.

63.  Defendants breached the agreement with Plaintiff by Defendants failure to make panel upgrades as needed for the solar-PV system to produce electricity.

64.  As a result of Defendants' breach of the agreement, Plaintiff has suffered damages in excess of $30,000.00. Plaintiffs have incurred and will continue to incur charges for electricity far in excess of what he would have otherwise paid had he not installed the solar-PY system.

## FOURTH CAUSE OF ACTION
## BREACH OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING
### [All Defendants]

65.   Plaintiff re-alleges, and incorporates by reference every allegation contained in the preceding paragraphs of this Verified Complaint as though set forth herein.

66.   Plaintiffs entered into written agreements with the Defendants based upon the representations of Defendants that Plaintiff would save money by installing a solar-PY system.

67.   The estimated savings promised to the Plaintiffs-prepared and created by Defendants and applicable to Plaintiff's solar-PV system, and did not disclose and by omission failed to inform Plaintiff that under the PPA Defendants would charge Plaintiff more than SDG&E by 6 cents resulting in substantial loss of value for Plaintiff.

68.   Defendants unfairly interfered with Plaintiff's right to receive the benefits of the solar- PV system and failed to inform Plaintiff that the system would cost Plaintiff thousands of dollars more than represented by Defendants. Plaintiff did not receive the financial benefits of installing the solar-PY system as promised by Defendants.

69.   At all times relevant, Defendants unreasonably denied Plaintiff the financial benefits promised to them by receiving federal and state tax benefits, incentives and accrued depreciation during the four years Plaintiff's solar-PV system did not provide usable energy as promised.

70.      Defendants owed Plaintiffs the duty of good faith and fair dealing. A special element of reliance exists between Defendants and Plaintiffs. The agreements in this case involve a special element of reliance, unequal bargaining power, and/or fiduciary obligations.

71.   Defendants exploited the unequal bargaining position, reliance, and circumstances in this case and, by their acts and omissions, Defendants breached the covenant of good faith and fair dealing.

72.   Defendants have knowingly and willfully breached the implied covenant of good faith and fair dealing by engaging in the acts and/or fraudulent omissions to mislead and/or deceive Plaintiffs.

73.   Defendants' breaches, as alleged herein, were committed with willful and wanton disregard for whether or not Plaintiff would actually save money by installing the solar-PY system.

74.   As a result of Defendants' conduct, Plaintiff has suffered damages to be shown by proof or proven at trial.

75.   Furthermore, Defendants' breach has caused and/or otherwise placed Plaintiff in a position where their monthly energy costs have been substantially increased and, as a direct and proximate result of the aforesaid misconduct, Plaintiff's electricity costs were caused to increase.

76.   In addition, Plaintiffs have been required to retain counsel as a result of Defendants' conduct and are entitled to recover Plaintiff's reasonable legal fees and costs.

77.   As a further direct and proximate result of Defendants' malicious, oppressive or despicable conduct, Plaintiff has been subjected to unjust hardship in conscious disregard of his rights, so as to justify an award of exemplary and punitive damages.

### FIFTH CAUSE OF ACTION
### CONSUMER FRAUD/DECEPTIVE TRADE PRACTICES
### [All Defendants]

78.   Plaintiff re-alleges, and incorporates by reference every allegation contained in the preceding paragraphs of this Verified Complaint as though set forth herein.

79.  Plaintiffs entered into written agreements with Defendants based upon representations of the Defendants that Plaintiff would save money by installing a solar-PY system.

80.  Defendants intentionally and fraudulently misled Plaintiff regarding the risk that metering rates could be changed and that Plaintiff could lose money by installing the solar-PY system.

81.  As described above, Defendants made false or misleading statements of fact concerning how much a solar-PV system would cost Plaintiff and fraudulently made false representations during the transaction, i.e., that Plaintiff would be able to save money by installing a solar-PV system, and therefore engaged in deceptive trade practices as enumerated in the Uniform Commercial Code.

82.  Defendants further engaged in a deceptive trade practice by failing to disclose a material fact, i.e., that metering rates could be changed, in connection with the sale or lease of solar-PY system.

83.  An action may be brought by any person who is a victim of consumer fraud, including a Deceptive Trade Practice, any action shall award: (a) Any damages that the claimant has sustained; (b) Any equitable relief that the court deems appropriate; and (c) The claimant's costs in the action and reasonable legal fees.

84.  As a result of Defendants' aforesaid conduct, Plaintiffs have suffered damages to be shown by proof or proven at trial.

### SIXTH CAUSE OF ACTION
### QUANTUM MERUIT
### [Defendant TESLA]

85.  Plaintiff re-alleges, and incorporates by reference every allegation contained in the preceding paragraphs of this Verified Complaint as though set forth herein.

86.   A contract was entered into on November 5, 2015 (See **Exhibit "A"**) between Plaintiff and Defendant SOLARCITY, then assumed by Defendant TESLA. The services to be provided under the PPA were never performed by either Defendant SOLARCITY OR Defendant TESLA.

87.   As a result of but services not completed, the question of fair payment is hereby brought to this court under the Doctrine of Quantum Meruit for equitable relief.

88.   Defendants incomplete performance under the PPA on the part of the Defendants due to panel upgrades or inverters or other modification or service provided by Defendants, and Defendants alone.

89.   As a result, Plaintiff seeks equitable relief by quantum meruit to determine whether payment to Defendants is due, if so in what amount payment should be made, and which party should be paid.

90.   As a result of Defendants' conduct, Plaintiff has suffered damages of a nature and amount in excess of the costs of the solar-PV system to be shown by proof or proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against each Defendant, jointly and severally, as follows:

(a) For contract damages of $30,000.00;

(b) For compensatory damages, according to proof;

(c) For damages for negligence in the amount of $50,000.00,

(d) For rescission of contract;

(e) For punitive and exemplary damages in the amount of $10,000.00;

(f) For equitable relief by quantum meruit;

(g) For federal and state tax credits, benefits, rebates or incentives on Subject Property in the amount of $4,500.00;

(h) For reasonable legal fees and costs of $200.00, and

(i) For such other relief as is just and proper

18

Respectfully submitted by:

Dated: January 29, 2020

MARK E. VERNON
Plaintiff, In Propria Persona

**VERIFICATION OF COMPLAINT**

I, Mark E. Vernon, do swear and affirm under penalty of perjury that the assertions in this Verification are true and correct and are based upon my personal knowledge:

(1) That I am the Plaintiff identified in the foregoing VERIFIED COMPLAINT.

(2) That I have read the foregoing VERIFIED COMPLAINT and know the Allegations of Fact described below, and am competent to testify thereto:

(3) I was told the following things by SOLARCITY and TESLA:

(a) That I would be able to save money by installing a solar-PV system;

(b) That I would be able to participate in selling power to SDG&E;

(c) That I would receive the same rate for electricity from SDG&E for the energy that my solar-PV system would feed back into the grid that SDG&E charged me;

(d) That I would be able to control and/or offset my electricity costs by installing a solar-PV system; and

(e) That I would be protected from rising electricity costs by installing a solar-PV system;

(4) That the above described Allegations of Fact in the VERIFIED COMPLAINT are true and correct to the best of my personal knowledge, information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury that the foregoing Verification is true and correct to the best of my knowledge and belief.

Executed in San Diego, California on January 29, 2020

Respectfully submitted by:

MARK E. VERNON
Plaintiff, In Propria Persona

20

**DEMAND FOR JURY TRIAL**

Plaintiff hereby request a trial by jury of all issues triable by jury.

DATED: January 29, 2020                                  Respectfully submitted,

MARK E. VERNON
Plaintiff, In Propria Persona

21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# EXHIBIT "A"

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# EXHIBIT "A"

DocuSign Envelope ID: A842F1E0-1385-4206-8E0C-6E9CEE32CB9E

Customer Name and Address
**Mark E Vernon**
**Nancy Vernon**
**3714 Merrimac Ave**
**San Diego, CA 92117**

Installation Location
**3714 Merrimac Ave**
**San Diego, CA 92117**

Date
**11/5/2015**

## Here are the key terms of your Power Purchase Agreement

# $0

System Installation cost

# 15.00¢

Electricity rate per kWh

*MEV*
Initial here

# 20yrs

Agreement Term

*MEV*
Initial here

## The SolarCity Promise

- We guarantee that if you sell your Home, the buyer will qualify to assume your Agreement. _____ Initial here   *MEV*
- We warrant all of our roofing work.
- We restore your roof at the end of the Agreement.
- We warrant, insure, maintain and repair the System. _____ Initial here   *MEV*
- We fix or pay for any damage we may cause to your property.
- We provide 24/7 web-enabled monitoring at no additional cost.
- The rate you pay us will never increase by more than 2.90% per year.
- The pricing in this Agreement is valid for 30 days after 11/5/2015.

## Your SolarCity Power Purchase Agreement Details

Amount due at contract signing
**$0**

Est. amount due at installation
**$0**

Est. amount due at building inspection
**$0**

Est. first year production
**11,408 kWh**

**Your Choices at the End of the Initial Term:**

- SolarCity will remove the System at no cost to you.
- You can upgrade to a new System with the latest solar technology under a new contract.
- You may purchase the System from SolarCity for its fair market value as specified in the Agreement.
- You may renew this Agreement for up to ten (10) years in two (2) five (5) year increments.

**Options for System Purchase:**

- At certain times, as specified in the Agreement, you may purchase the System.
- These options apply during the 20 year term of our Agreement and not beyond that term.

**3055 Clearview Way, San Mateo, CA 94402  |  888.765.2489  |  solarcity.com**

1280643

Power Purchase Agreement, version 9.0.4, October 22, 2015
SAPC/SEFA Compliant
Contractors License CA CSLB 888104
Document generated on 11/5/2015
Copyright 2008-2015 SolarCity Corporation, All Rights Reserved



DocuSign Envelope ID: A842F1E0-1385-4206-8E0C-6E9CEE32CB9E

1.  **Introduction**.

    This Power Purchase Agreement (this "Power Purchase Agreement," "Agreement" or "PPA") is the agreement between you and SolarCity Corporation (together with its successors and assigns, "SolarCity" or "we"), covering the sale to you of the power produced by the solar panel system (the "System") we will install at your home. SolarCity agrees to sell to you, and you agree to buy from SolarCity, all of the power produced by the System. The System will be installed by SolarCity at the address you listed above ( the "Property" or your "Home"). This Power Purchase Agreement is eight (8) pages long and has up to three (3) Exhibits depending on the state where you live. SolarCity provides you with a Limited Warranty (the "Limited Warranty"). The Limited Warranty is attached as **Exhibit 2**. If you have any questions regarding this Power Purchase Agreement, please ask your SolarCity sales consultant.

2.  **Term**.

    SolarCity agrees to sell you the power generated by the System for 20 years (240 months), plus, if the Interconnection Date is not on the first day of a calendar month, the number of days left in that partial calendar month. We refer to this period of time as the "Term." The Term begins on the Interconnection Date. The "Interconnection Date" is the date that the System is turned on and generating power. SolarCity will notify you when your System is ready to be turned on.

3.  **Intentionally Left Blank.**

4.  **Power Purchase Agreement Payments; Amounts**.

    (a) Power Price. During the first year of the term, you are purchasing all of the power the System produces for $0.1500 per kWh. After the first year, the price per kWh will increase by 2.90% per year. There are no installation costs.

    (b) Payments.

    Your monthly payments will be the product of (A) the price per kWh multiplied by (B) the actual kWh output for the calendar month ("Monthly Payments"). Invoices for Monthly Payments will be mailed or emailed no later than ten (10) days after the end of a calendar month. If you are paying your invoice by automatic debit from your checking or savings account (ACH) we will debit your bank account on or about the 1st day of the next month following invoice (e.g. January invoices are sent in early February and debited on or about

March 1). Monthly Payments will change as your price per kWh changes over the Term of this PPA and as System production varies (e.g., summer has higher production). You will have regular access to the System's production via your SolarCity online account. Payments due upon installation, if any, are due immediately prior to commencement of installation. **You will make no Monthly Payments if you are fully prepaying this PPA. In this case, you will pay only the amounts listed in the key terms summary on page one of this PPA.**

    (c) Estimated Production. If (i) the System is shut down for more than seven (7) full twenty-four (24) hour days cumulatively during the Term because of your actions; or (ii) you take some action that significantly reduces the output of the System; (iii) you don't trim your bushes or trees to their appearance when you signed this PPA to avoid foliage growth from shading the System; or (iv) your System is not reporting production to SolarCity (e.g. you have disconnected the PowerGuide system or the internet connection at your Home goes down on the reporting day), then SolarCity will reasonably estimate the amount of power that would have been delivered to you during such System or reporting outages or reduced production periods ("Estimated Production") and shall consider Estimated Production as actual production for purposes of this paragraph. In the first year of the Term, Estimated Production will be based on our production projections. After the first year of the Term, Estimated Production will be based on historical production for that month in the prior year. If we bill you for Estimated Production because your System is not reporting production to SolarCity, and we subsequently determine that we have either overestimated or underestimated the actual production, then we will adjust the next bill downward (to refund overbilling) or upward (to make up for lost billing). You will not be charged for Estimated Production when the System is not producing electricity due to SolarCity's fault, or if it's due to grid failure or power outages caused by someone other than you.

5.  **Power Purchase Agreement Obligations**.

    (a) **System, Home and Property Maintenance**

    **You agree to:**

       (i)   only have the System repaired pursuant to the Limited Warranty and reasonably cooperate when repairs are being made;



DocuSign Envelope ID: A842F1E0-1385-4206-8E0C-6E9CEE32CB9E

(ii)  keep trees, bushes and hedges trimmed so that the System receives as much sunlight as it did when SolarCity installed it;

(iii)  not modify your Home in a way that shades the System;

(iv)  be responsible for any conditions at your Home that affect the installation (e.g., blocking access to the roof, or removing a tree that is in the way, prior work you have done on your home that was not permitted);

(v)  not remove any markings or identification tags on the System;

(vi)  permit SolarCity, after we give you reasonable notice, to inspect the System for proper operation as we reasonably determine necessary;

(vii)  use the System primarily for personal, family or household purposes, but not to heat a swimming pool;

(viii)  not do anything, permit or allow to exist any condition or circumstance that would cause the System not to operate as intended at the Property;

(ix)  notify SolarCity if you think the System is damaged or appears unsafe; if the System is stolen; and prior to changing your power supplier;

(x)  have anyone who has an ownership interest in your Home sign this Power Purchase Agreement;

(xi)  return any documents we send you for signature (like incentive claim forms) within seven (7) days of receiving them; and

(xii)  maintain and make available, at your cost, a functioning indoor internet connection with a router, one DHCP enabled Ethernet port with internet access and standard AC power outlet close enough and free of interference to enable an internet-connected gateway provided by SolarCity to communicate wirelessly with the system's inverter (typically this is 80 feet, but may depend on site conditions). See section 2(c)(ii) of the Limited Warranty for details; and

(xiii)  if your home is governed by a home owner's association or similar community organization, obtain all approvals and authorizations for the System required by that organization and advise us of any requirements of that organization that

will otherwise impact the System, its installation or operation.

**(b)**  **System Construction, Repair, Insurance and SolarCity's obligations:**

**SolarCity agrees to:**

(i)  schedule the installation of the System at a mutually convenient date and time;

(ii)  construct the System according to written plans you review;

(iii)  provide you with a web-enabled meter to accurately measure the amount of power the System delivers to you;

(iv)  provide you with a home energy evaluation;

(v)  notify you if the System design has to be materially changed so that you can review any such changes;

(vi)  clean up after ourselves during the construction of the System;

(vii)  insure the System against all damage or loss unless (A) that damage or loss is caused by your gross negligence; or (B) that damage or loss is caused by ball strikes; or (C) you intentionally damage the System;

(viii)  repair the System pursuant to the Limited Warranty and reasonably cooperate with you when scheduling repairs;

(ix)  create a priority stream of operation and maintenance payments to provide enough cash flow in our financing transactions to pay for the Limited Warranty obligations and the repair and maintenance of the System in accordance with this PPA even if SolarCity ceases to operate; and

(x)  not put a lien on your Home or Property.

**(c)**  **Home Renovations or Repairs**

If you want to make any repairs or improvements to the Property that could interfere with the System (such as repairing the roof where the System is located), you may only remove and replace the System pursuant to the Limited Warranty.

**(d)**  **Automatic Payment, Late Charges, Fees**

In addition to the other amounts you agree to pay in this Power Purchase Agreement, you agree to pay the following:



DocuSign Envelope ID: A842F1E0-1385-4206-8E0C-6E9CEE32CB9E

(i) Automatic Payment Discount: If you make your Monthly Payments by allowing us to automatically debit your checking or savings account, then you will receive a discount of $7.50 on your Monthly Payments. The Monthly Payments listed in Section 4 of this Agreement reflect this discount. If you do not allow the automatic debit, this discount will not be applied to your Monthly Payments and each Monthly Payment will be $7.50 greater;

(ii) Returned Check Fee: $25 (or such lower amount as required by law) for any check or withdrawal right that is returned or refused by your bank; and

(iii) Late Payments: accrue interest at the lesser of twelve percent (12%) annually or the maximum allowable by applicable law.

**(e) Taxes**

Your SolarCity electricity rate of $0.1500 per kWh is composed of an electricity rate of $0.1500 plus current taxes of $0.0000. You agree to pay any changes in the applicable taxes related to this PPA. Thus, if tax rates change, your SolarCity electricity rate will change to reflect this rate change. If this PPA contains a purchase option at the end of the Term, you agree to pay any applicable tax on the purchase price for the System. You also agree to pay as invoiced any applicable personal property taxes on the System that your local jurisdiction may levy.

**(f) No Alterations**

You agree that you will not make any modifications, improvements, revisions or additions to the System or take any other action that could void the Limited Warranty on the System without SolarCity's prior written consent. If you make any modifications, improvements, revisions or additions to the System, they will become part of the System and shall be SolarCity's property.

**(g) Access to the System**

(i) You grant to SolarCity and its employees, agents and contractors the right to reasonably access all of the Property as necessary for the purposes of (A) installing, constructing, operating, owning, repairing, removing and replacing the System or making any additions to the System or installing complementary technologies on or about the location of the System; (B) enforcing SolarCity's rights as to this Power Purchase

Agreement and the System; (C) installing, using and maintaining electric lines and inverters and meters, necessary to interconnect the System to your electric system at the Property and/or to the utility's electric distribution system; or (D) taking any other action reasonably necessary in connection with installing, constructing, operating, owning, repairing, removing and replacing the System. This access right shall continue for up to ninety (90) days after this Power Purchase Agreement expires to provide SolarCity with time to remove the System at the end of the Power Purchase Agreement. SolarCity shall provide you with reasonable notice of its need to access the Property whenever commercially reasonable.

(ii) During the time that SolarCity has access rights you shall ensure that its access rights are preserved and shall not interfere with or permit any third party to interfere with such rights or access. You agree that the System is not a fixture, but SolarCity has the right to file any UCC-1 financing statement or fixture filing that confirms its interest in the System.

**(h) Indemnity**

To the fullest extent permitted by law, you shall indemnify, defend, protect, save and hold harmless SolarCity, its employees, officers, directors, agents, successors and assigns from any and all third party claims, actions, costs, expenses (including reasonable attorneys' fees and expenses), damages, liabilities, penalties, losses, obligations, injuries, demands and liens of any kind or nature arising out of, connected with, relating to or resulting from your negligence or willful misconduct; provided, that nothing herein shall require you to indemnify SolarCity for its own negligence or willful misconduct. The provisions of this paragraph shall survive termination or expiration of this Power Purchase Agreement.

**(i) Payments**

SUBJECT TO SECTION 4(b) ABOVE, YOU AGREE THAT THE OBLIGATION TO PAY ALL PAYMENTS AND ALL OTHER AMOUNTS DUE UNDER THIS PPA SHALL BE, ABSOLUTE AND UNCONDITIONAL UNDER ALL CIRCUMSTANCES AND SHALL NOT BE SUBJECT TO ANY ABATEMENT, DEFENSE, COUNTERCLAIM, SETOFF, RECOUPMENT OR REDUCTION FOR ANY

DocuSign Envelope ID: A842F1E0-1385-4206-8E0C-6E9CEE32CB9E

REASON WHATSOEVER, IT BEING THE EXPRESS INTENT OF THE PARTIES THAT ALL AMOUNTS PAYABLE BY YOU HEREUNDER SHALL BE, AND CONTINUE TO BE, PAYABLE IN ALL EVENTS INCLUDING BY YOUR HEIRS AND ESTATE AND, EXCEPT AS SET FORTH BELOW IN SECTIONS 6, 23 AND 24, YOU HEREBY WAIVE ALL RIGHTS YOU MAY HAVE TO REJECT OR CANCEL THIS PPA, TO REVOKE ACCEPTANCE OF THE SYSTEM, OR TO GRANT A SECURITY INTEREST IN THE SYSTEM.

(j) **Credit Check**

You authorize SolarCity, or its designee, to obtain your credit report now and in the future, check your credit and employment history, answer questions others may ask regarding your credit and share your credit information with SolarCity's financing partners. You certify that all information you provide to us in connection with checking your credit will be true and understand that this information must be updated upon request if your financial condition changes.

6. **Conditions Prior to Installation of the System; Change Orders**.

(a) SolarCity's obligation to install the System and sell you the power it produces is conditioned on the following items having been completed to its reasonable satisfaction:

(i) completion of (A) the engineering site audit (a thorough physical inspection of the Property, including, if applicable, geotechnical work), (B) the final System design, and (C) real estate due diligence to confirm the suitability of the Property for the construction, installation and operation of the System;

(ii) approval of this Power Purchase Agreement by one of SolarCity's financing parties;

(iii) your meeting the applicable credit score;

(iv) confirmation of rebate, tax credit and renewable energy credit payment availability in the amount used to calculate the Monthly Payments set forth in this Power Purchase Agreement;

(v) confirmation that SolarCity will obtain all applicable benefits referred to in Section 9;

(vi) receipt of all necessary zoning, land use and building permits; and

(vii) completion of any renovations, improvements or changes reasonably required at your Home or on the Property (e.g., removal of a tree or necessary roof repairs to enable us to safely install the System).

(viii) if your home is governed by a home owner's association or similar community organization, your receipt of all approvals and authorizations for the System required by that organization and advising us of any requirements of that organization that will otherwise impact the System, its installation or operation.

SolarCity may terminate this Power Purchase Agreement without liability if, in its reasonable judgment, any of the above listed conditions (i) through (vii) will not be satisfied for reasons beyond its reasonable control. Once SolarCity starts installation, however, it may not terminate this Power Purchase Agreement for your failure to satisfy conditions (i) through (vii) above.

(b) Amendments.

The System's initial estimated production is set forth in this PPA. After System design, the estimated production is likely to change and we will share those changes with you prior to installation. If the estimated production increases or decreases by more than twenty percent (20%), we will document that change in an amendment..

You authorize SolarCity to make corrections to the utility paperwork to conform to this PPA or any amendments to this PPA we both sign.

7. **Warranty**.

YOU UNDERSTAND THAT THE SYSTEM IS WARRANTED SOLELY UNDER THE LIMITED WARRANTY ATTACHED AS **EXHIBIT 2**, AND THAT THERE ARE NO OTHER REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR ANY PURPOSE, CONDITION, DESIGN, CAPACITY, SUITABILITY OR PERFORMANCE OF THE SYSTEM OR ITS INSTALLATION.

8. **Transfer**.

SolarCity will assign this PPA to one of its financing partners. You agree that SolarCity may assign, sell or transfer the System and this Power Purchase Agreement, or any part of this Power Purchase Agreement or the exhibits, without your consent. This assignment does not



DocuSign Envelope ID: A842F1E0-1385-4206-8E0C-6E9CEE32CB9E

change SolarCity's obligation to maintain and repair your System as set forth in the Warranty.

9. **Ownership of the System; Tax Credits and Rebates.**

You agree that the System is SolarCity's personal property under the Uniform Commercial Code. You understand and agree that this PPA is not a contract to sell or lease the System to you. SolarCity owns the System for all purposes, including any data generated from the System. You shall at all times keep the System free and clear of all liens, claims, levies and legal processes not created by SolarCity, and shall at your expense protect and defend SolarCity against the same.

YOU UNDERSTAND AND AGREE THAT ANY AND ALL TAX CREDITS, INCENTIVES, RENEWABLE ENERGY CREDITS, GREEN TAGS, CARBON OFFSET CREDITS, UTILITY REBATES OR ANY OTHER NON-POWER ATTRIBUTES OF THE SYSTEM ARE THE PROPERTY OF AND FOR THE BENEFIT OF SOLARCITY, USABLE AT ITS SOLE DISCRETION. SOLARCITY SHALL HAVE THE EXCLUSIVE RIGHT TO ENJOY AND USE ALL SUCH BENEFITS, WHETHER SUCH BENEFITS EXIST NOW OR IN THE FUTURE. YOU AGREE TO REFRAIN FROM ENTERING INTO ANY AGREEMENT WITH YOUR UTILITY THAT WOULD ENTITLE YOUR UTILITY TO CLAIM ANY SUCH BENEFITS. YOU AGREE TO REASONABLY COOPERATE WITH SOLARCITY SO THAT IT MAY CLAIM ANY TAX CREDITS, RENEWABLE ENERGY CREDITS, REBATES, CARBON OFFSET CREDITS OR ANY OTHER BENEFITS FROM THE SYSTEM. THIS MAY INCLUDE TO THE EXTENT ALLOWABLE BY LAW, ENTERING INTO NET METERING AGREEMENTS, INTERCONNECTION AGREEMENTS, AND FILING RENEWABLE ENERGY/CARBON OFFSET CREDIT REGISTRATIONS AND/OR APPLICATIONS FOR REBATES FROM THE FEDERAL, STATE OR LOCAL GOVERNMENT OR A LOCAL UTILITY AND GIVING THESE TAX CREDITS, RENEWABLE ENERGY/CARBON CREDITS, REBATES OR OTHER BENEFITS TO SOLARCITY.

10. **Purchasing the System Prior to the End of the Term.**

In addition to purchasing the System at the end of the Term, you have the option to purchase the System prior to the end of the Term as detailed below. To exercise this option you must be in good standing under this Power Purchase Agreement and you need to give us at least one (1) month's, but not more than three (3) months' prior written notice. You can purchase this System:

    (i)    on the five (5) year anniversary of the beginning of the Term and every annual

anniversary after the five (5) year anniversary; and

    (ii)    at any time after the five (5) year anniversary of the beginning of the Term, when you sell your Home; and

    (iii)    if SolarCity ever ceases its operations.

In each of (i), (ii) and (iii) above, the price you will pay for the System will be the System's fair market value ("FMV"). A third party independent appraiser will be retained to compute the System's FMV. SolarCity's maintenance and repair obligations under the Limited Warranty (Exhibit 2) will continue when you purchase the System until what would have been the end of the original Term.

11. **Renewal.**

If you are in compliance with your PPA, you have the option to renew your PPA for up to ten (10) years in two (2) five (5) year renewal periods. We will send you renewal forms three (3) months prior to the expiration of the Term, which forms shall set forth the new Monthly Payments due under the renewal PPA, based on our assessment of the then current fair market value of the System. If you want to renew, complete the renewal forms and return them to us at least one (1) month prior to the end of the PPA. In the event that you do not agree to the new Monthly Payments this PPA shall expire by its terms on the termination date. If you don't send us anything in writing after we send you the renewal forms, then this PPA shall renew for an additional one (1) year term at ten percent (10%) less than the then-current average rate charged by your local utility and shall continue to renew for one (1) year terms at the same rate as your first renewal until (i) you give us notice at least thirty (30) days prior to a renewal term that you do not wish to renew; or (ii) we send you a notice terminating the PPA.

12. **Selling Your Home.**

    (a) If you sell your Home you can:

        (i) **Transfer this Power Purchase Agreement and the Monthly Payments**

        The person buying your Home (the "Home Buyer") can sign a transfer agreement assuming all of your rights and obligations under this Agreement by qualifying in one of three ways:

            1)  The Home Buyer has a FICO score of 650 or greater;

            2)  The Home Buyer is paying cash for your Home; or

            3)  If the Home Buyer does not qualify under (1)



DocuSign Envelope ID: A842F1E0-1385-4206-8E0C-6E9CEE32CB9E

or (2), the Home Buyer qualifies for a mortgage to purchase your Home and either you or the Home Buyer pays us a $250 credit exception fee.

(ii) **Move the System to Your New Home**

Where permitted by the utility(s), the System can be moved to your new home pursuant to Section 4 of the Limited Warranty. You will need to provide the same rights to SolarCity as provided for in this PPA and provide any third party consents or releases required by SolarCity in connection with the substitute premises.

(iii) **Prepay this Power Purchase Agreement and Transfer only the Use of the System**

At any time during the Term, you can prepay this Power Purchase Agreement in full by paying SolarCity the expected remaining payments (estimated future production during the rest of the Term multiplied by the average kWh rate during the rest of the Term) at a five percent (5%) discount rate. The person buying your Home will only need to sign a transfer agreement to assume your rights and non-Monthly Payment obligations under this PPA. The System stays at your Home, the person buying your Home does not make any Monthly Payments and has only to comply with the non-Monthly Payment portions of this PPA.

(iv) **Purchase the System (see Section 10)**

(b) You agree to give SolarCity at least fifteen (15) days but not more than three (3) months prior written notice if you want someone to assume your PPA obligations. In connection with this assumption, you, your approved buyer and SolarCity shall execute a written transfer of this PPA.

(c) If you sell your Home and can't comply with any of the options in subsection (a) above, you will be in default under this Power Purchase Agreement. Section 12(a) includes a Home sale by your estate or heirs.

(d) **Free Assumability.** This agreement is free of any restrictions that would prevent the homeowner from freely transferring their home ("Property"). SolarCity will not prohibit the sale, conveyance or refinancing of the Property. SolarCity may choose to file in the real estate records a UCC-1 financing statement ("Fixture Filing") that preserves their rights in the System. The Fixture Filing is intended only to give notice of its rights relating to the System and is not a lien or

encumbrance against the Property. SolarCity shall explain the Fixture Filing to any subsequent purchasers of the Property and any related lenders as requested. SolarCity shall also accommodate reasonable requests from lenders or title companies to facilitate a purchase, financing or refinancing of the Property.

(e) EXCEPT AS SET FORTH IN THIS SECTION, YOU WILL NOT ASSIGN, SELL, PLEDGE OR IN ANY OTHER WAY TRANSFER YOUR INTEREST IN THE SYSTEM OR THIS PPA WITHOUT OUR PRIOR WRITTEN CONSENT, WHICH SHALL NOT BE UNREASONABLY WITHHELD.

13. **Loss or Damage.**

(a) Unless you are grossly negligent, you intentionally damage the System, or damage or loss to the System is caused by ball strikes, SolarCity will bear all of the risk of loss, damage, theft, destruction or similar occurrence to any or all of the System. Except as expressly provided in this PPA, no loss, damage, theft or destruction will excuse you from your obligations under this PPA, including Monthly Payments.

(b) If there is loss, damage, theft, destruction or a similar occurrence affecting the System, and you are not in default of this PPA, you shall continue to timely make all Monthly Payments and pay all other amounts due under the PPA and, cooperate with SolarCity, at SolarCity's sole cost and expense, to have the System repaired pursuant to the Limited Warranty.

14. **Limitation of Liability.**

(a) **No Consequential Damages**

SOLARCITY'S LIABILITY TO YOU UNDER THIS POWER PURCHASE AGREEMENT SHALL BE LIMITED TO DIRECT, ACTUAL DAMAGES ONLY.  YOU AGREE THAT IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR CONSEQUENTIAL, INCIDENTAL, PUNITIVE, EXEMPLARY, SPECIAL OR INDIRECT DAMAGES.

(b) **Actual Damages**

EXCEPT FOR CLAIMS UNDER SECTION 5(H), NEITHER PARTY'S LIABILITY TO THE OTHER WILL EXCEED AN AMOUNT EQUAL TO THE MAXIMUM AMOUNT THAT COULD BE PAYABLE BY YOU UNDER SECTION 16(H). DAMAGES TO YOUR HOME, BELONGINGS OR PROPERTY RESULTING FROM THE INSTALLATION OR OPERATION OF THE SYSTEM ARE COVERED IN SECTION 6(C) OF THE LIMITED WARRANTY.

DocuSign Envelope ID: A842F1E0-1385-4206-8E0C-6E9CEE32CB9E

**15. Default.**

You will be in default under this Power Purchase Agreement if any one of the following occurs:

(a) you fail to make any payment when it is due and such failure continues for a period of ten (10) days;

(b) you fail to perform any material obligation that you have undertaken in this PPA (which includes doing something you have agreed not to do, like alter the System) and such failure continues for a period of fourteen (14) days after written notice;

(c) you or your guarantor have provided any false or misleading financial or other information to obtain this Power Purchase Agreement;

(d) you assign, transfer, encumber, sublet or sell this PPA or any part of the System without SolarCity's prior written consent; or

(e) you or any guarantor makes an assignment for the benefit of creditors, admits in writing its insolvency, files or there is filed against you or it a voluntary petition in bankruptcy, is adjudicated bankrupt or insolvent or undertakes or experiences any substantially similar activity.

**16. Remedies in Case of Default.**

If this Power Purchase Agreement is in default, we may take any one or more of the following actions.  If the law requires us to do so, we will give you notice and wait any period of time required before taking any of these actions. We may:

(a) terminate this PPA;

(b) take any reasonable action to correct your default or to prevent our loss; any amount we pay will be added to the amount you owe us and will be immediately due;

(c) require you, at your expense, to return the System or make it available to us in a reasonable manner;

(d) proceed, by appropriate court action, to enforce performance of this PPA and to recover damages for your breach;

(e) disconnect, turn off or take back the System by legal process or self-help, but we may not disturb the peace or violate the law;

(f) report such non-operational status of the System to your utility, informing them that you are no longer net metering;

(g) charge you a reasonable reconnection fee for reconnecting the System to your utility or turning your System back on after we disconnect or turn off the System due to your default;

(h) recover from you (i) a payment equal to the purchase price as set forth in this agreement plus (ii) all taxes, late charges, penalties, interest and all or any other sums then accrued or due and owing; or

(i) use any other remedy available to us in this PPA or by law.

We may submit to credit reporting agencies (credit bureaus) negative credit reports that would be reflected on your credit record if you do not pay any amounts due under this PPA as required.

You agree to repay us for any reasonable amounts we pay to correct or cover your default. You also agree to reimburse us for any costs and expenses we incur relating to the System's return resulting from early termination. By choosing any one or more of these remedies, SolarCity does not give up its right to use another remedy. By deciding not to use any remedy should this Power Purchase Agreement be in default, SolarCity does not give up our right to use that remedy in case of a subsequent default.

**17. System Removal; Return.**

At the end of the Term or the termination of this PPA, if you have not renewed this PPA or exercised your purchase option (if any) and you have not defaulted, then within ninety (90) days you agree to call SolarCity at the telephone number listed in Section 7 of Exhibit 2 to schedule a convenient time for SolarCity to remove the System from your Home at no cost to you.

**18. Applicable Law; Arbitration.**

PLEASE READ THIS SECTION CAREFULLY. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY.

The laws of the state where your Home is located shall govern this PPA without giving effect to conflict of laws principles. We agree that any dispute, claim or disagreement between us (a "Dispute") shall be resolved exclusively by arbitration.



DocuSign Envelope ID: A842F1E0-1385-4208-8E0C-6E9CEE32CB9E

The arbitration, including the selecting of the arbitrator, will be administered by JAMS, under its Streamlined Arbitration Rules (the "Rules") by a single neutral arbitrator agreed on by the parties within thirty (30) days of the commencement of the arbitration.   The arbitration will be governed by the Federal Arbitration Act (Title 9 of the U.S. Code). Either party may initiate the arbitration process by filing the necessary forms with JAMS. To learn more about arbitration, you can call any JAMS office or review the materials at www.jamsadr.com. The arbitration shall be held in the location that is most convenient to your Home. If a JAMS office does not exist within 50 (fifty) miles of your Home, then we will use another accredited arbitration provider with offices close to your Home.

If you initiate the arbitration, you will be required to pay the first $125 of any filing fee.  We will pay any filing fees in excess of $125 and we will pay all of the arbitration fees and costs.  If we initiate the arbitration, we will pay all of the filing fees and all of the arbitration fees and costs.  We will each bear all of our own attorney's fees and costs except that you are entitled to recover your attorney's fees and costs if you prevail in the arbitration and the award you receive from the arbitrator is higher than SolarCity's last written settlement offer.  When determining whether your award is higher than SolarCity's last written settlement offer your attorney's fees and costs will not be included.

Only Disputes involving you and SolarCity may be addressed in the arbitration. Disputes must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If either of us arbitrates a Dispute, neither of us, nor any other person, may pursue the Dispute in arbitration as a class action, class arbitration, private attorney general action or other representative action, nor may any such Dispute be pursued on your or our behalf in any litigation in any court. Claims regarding any Dispute and remedies sought as part of a class action, class arbitration, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis. This means that the arbitration may not address disputes involving other persons with disputes similar to the Disputes between you and SolarCity.

The arbitrator shall have the authority to award any legal or equitable remedy or relief that a court could order or grant under this agreement. The arbitrator, however, is not authorized to change or alter the terms of this agreement or to make any award that would extend to any transaction other than yours. All statutes of limitations that are applicable to any dispute shall apply to any arbitration between us.  The arbitrator will issue a decision or award in writing, briefly stating the essential findings of fact and conclusions of law.

BECAUSE YOU AND WE HAVE AGREED TO ARBITRATE ALL DISPUTES, NEITHER OF US WILL HAVE THE RIGHT TO LITIGATE THAT DISPUTE IN COURT, OR TO HAVE A JURY TRIAL ON THAT DISPUTE, OR ENGAGE IN DISCOVERY EXCEPT AS PROVIDED FOR IN THE RULES. FURTHER, YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS PERTAINING TO ANY DISPUTE. THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING ON THE PARTIES AND MAY BE ENTERED AND ENFORCED IN ANY COURT HAVING JURISDICTION, EXCEPT TO THE EXTENT IT IS SUBJECT TO REVIEW IN ACCORDANCE WITH APPLICABLE LAW GOVERNING ARBITRATION AWARDS. OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.

19. **Waiver.**

Any delay or failure of a party to enforce any of the provisions of this PPA, including but not limited to any remedies listed in this PPA, or to require performance by the other party of any of the provisions of this PPA, shall not be construed to (i) be a waiver of such provisions or a party's right to enforce that provision; or (ii) affect the validity of this PPA.

20. **Privacy/Publicity**

You grant SolarCity the right to publicly use, display, share, and advertise the photographic images, Project details, price and any other non-personally identifying information of your Project. SolarCity shall not knowingly release any personally identifiable information about you or any data associating you with the Project location. You may opt-out of these publicity rights by giving us written notice and mailing it to: SolarCity Corporation, Attention: Publicity Opt Out, 3055 Clearview Way, San Mateo, CA 94402.

21. **Notices.**

All notices under this PPA shall be in writing and shall be by personal delivery, facsimile transmission, electronic mail, overnight courier, or certified or registered mail, return receipt requested.



DocuSign Envelope ID: A842F1E0-1385-4206-8E0C-6E9CEE32CB9E

22. **Entire Agreement; Changes**.

This PPA contains the parties' entire agreement regarding the sale and purchase of power generated by the System. There are no other agreements regarding this PPA, either written or oral.  Any change to this PPA must be in writing and signed by both parties. Only an authorized officer of SolarCity may execute any change to this Agreement on behalf of SolarCity.  If any portion of this PPA is determined to be unenforceable, the remaining provisions shall be enforced in accordance with their terms or shall be interpreted or re-written so as to make them enforceable.

REST OF PAGE INTENTIONALLY LEFT BLANK.



DocuSign Envelope ID: A842F1E0-1385-4206-8E0C-6E9CEE32CB9E

**23. NOTICE OF RIGHT TO CANCEL.**

YOU MAY CANCEL THIS CONTRACT AT ANY TIME PRIOR
TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE
DATE YOU SIGN THIS CONTRACT.  SEE EXHIBIT 1, THE
ATTACHED NOTICE OF CANCELLATION FORM FOR AN
EXPLANATION OF THIS RIGHT.

**24. ADDITIONAL RIGHTS TO CANCEL.**

IN ADDITION TO ANY RIGHTS YOU MAY HAVE TO CANCEL
THIS PPA UNDER SECTION 23, YOU MAY ALSO CANCEL
THIS PPA AT NO COST AT ANY TIME PRIOR TO
COMMENCEMENT OF CONSTRUCTION ON YOUR HOME.

**25. Pricing**

The pricing in this PPA is valid for 30 days after 11/5/2015.
If you don't sign this PPA and return it to us on or prior to
30 days after 11/5/2015, SolarCity reserves the right to
reject this PPA unless you agree to our then current pricing.

I have read this Power Purchase Agreement and the Exhibits in
their entirety and I acknowledge that I have received a
complete copy of this Power Purchase Agreement.

**Customer's Name: Mark E Vernon**

Signature: _Mark E Vernon_

Date: 11/5/2015

**Customer's Name: Nancy Vernon**

Signature: _Nancy Vernon_

Date: 11/5/2015

**Power Purchase Agreement**

# SolarCity
# approved

Signature: _Lyndon Rive, CEC_

Date: 11/5/2015



DocuSign Envelope ID: A842F1E0-1385-4206-8E0C-6E9CEE32CB9E

**EXHIBIT 1 (SOLARCITY COPY)**
**NOTICE OF CANCELLATION**
**STATUTORILY-REQUIRED LANGUAGE**


**Notice of Cancellation**


**Date of Transaction: The date you signed the Power Purchase Agreement.**

**You may CANCEL this transaction, without any penalty or obligation, within THREE BUSINESS DAYS from the above date. If you cancel, any property traded in, any payments made by you under the contract or sale and any negotiable instrument executed by you will be returned within TEN DAYS following receipt by the seller (SolarCity Corporation) of your cancellation notice, and any security interest arising out of the transaction will be canceled. If you cancel, you must make available to the seller (SolarCity Corporation) at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller (SolarCity Corporation) regarding the return shipment of the goods at the seller's (SolarCity Corporation's) expense and risk. If you do make the goods available to the seller (SolarCity Corporation) and the seller (SolarCity Corporation) does not pick them up within 20 days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller (SolarCity Corporation), or if you agree to return the goods to the seller (SolarCity Corporation) and fail to do so, then you remain liable for performance of all obligations under the contract.**

**To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice, or any other written notice, or send a telegram to SolarCity Corporation, Document Receiving, 6611 Las Vegas Blvd. S., Unit 200, Las Vegas, NV 89119 NOT LATER THAN MIDNIGHT of the date that is THREE BUSINESS DAYS from the date you signed the Power Purchase Agreement.**

**I, Mark E Vernon, HEREBY CANCEL THIS TRANSACTION on _____ [Date].**

**Customer's Signature:**

_____

**Customer's Signature:**

_____



DocuSign Envelope ID: A842F1E0-1385-4206-8E0C-6E9CEE32CB9E

**EXHIBIT 1 (CUSTOMER COPY)**
**NOTICE OF CANCELLATION**
**STATUTORILY-REQUIRED LANGUAGE**

**Notice of Cancellation**

**Date of Transaction: The date you signed the Power Purchase Agreement.**

**You may CANCEL this transaction, without any penalty or obligation, within THREE BUSINESS DAYS from the above date. If you cancel, any property traded in, any payments made by you under the contract or sale and any negotiable instrument executed by you will be returned within TEN DAYS following receipt by the seller (SolarCity Corporation) of your cancellation notice, and any security interest arising out of the transaction will be canceled. If you cancel, you must make available to the seller (SolarCity Corporation) at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller (SolarCity Corporation) regarding the return shipment of the goods at the seller's (SolarCity Corporation's) expense and risk. If you do make the goods available to the seller (SolarCity Corporation) and the seller (SolarCity Corporation) does not pick them up within 20 days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller (SolarCity Corporation), or if you agree to return the goods to the seller (SolarCity Corporation) and fail to do so, then you remain liable for performance of all obligations under the contract.**

**To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice, or any other written notice, or send a telegram to SolarCity Corporation, Document Receiving, 6611 Las Vegas Blvd. S., Unit 200, Las Vegas, NV 89119 NOT LATER THAN MIDNIGHT of the date that is THREE BUSINESS DAYS from the date you signed the Power Purchase Agreement.**

**I, Mark E Vernon, HEREBY CANCEL THIS TRANSACTION on _____ [Date].**

**Customer's Signature:**

_____

**Customer's Signature:**

_____



DocuSign Envelope ID: A842F1E0-1385-4206-8E0C-6E9CEE32CB9E

**EXHIBIT 2**

**PERFORMANCE GUARANTEE AND LIMITED WARRANTY**

1. **INTRODUCTION**

   This Performance Guarantee and Limited Warranty (this "Limited Warranty") is SolarCity's agreement to provide you warranties on the System you are hosting pursuant to our PPA. The System will be professionally installed by SolarCity at the address you listed in the PPA. We will refer to the installation location as your "Property" or your "Home." This Limited Warranty begins when we start installing the System at your Home.  We look forward to helping you produce clean, renewable solar power at your Home.

2. **LIMITED WARRANTIES, PERFORMANCE GUARANTEE**

   (a) **Limited Warranties**

       (i) **System Warranty**

           Under normal use and service conditions the System will be free from defects in workmanship or defects in, or a breakdown of, materials or components, for the full Term;

       (ii) **Roof Warranty**

           All roof penetrations we make for your System will be watertight. This warranty will run the longer of (a) ten (10) years or (b) the length of any existing installation warranty or new home builder performance standard for your roof;

       (iii) **Damage Warranty**

           We will repair damage we cause to your Home, your belongings or your Property or pay you for the damage we cause, as limited by Section 6, for the full Term (except damages that result from our roof penetrations, which damages are covered for the first ten (10) years of the Term).

       Under each of these warranties SolarCity will repair or replace any damage, defective part, material or component or correct any defective workmanship, at no cost or expense to you (including all labor costs), when you submit a valid claim to us under this Limited Warranty.  SolarCity may use new or reconditioned parts when making repairs or replacements. SolarCity may also, at no additional cost to you, upgrade or add to any part of the System to ensure that it performs according to the guarantees set forth in this Limited Warranty.  Cosmetic repairs that do not involve safety or performance shall be made at SolarCity's discretion.

   (b) **Performance Guarantee**

       (i) **Performance Guarantee**

           SolarCity guarantees that during the Power Purchase Agreement Term the System will operate within manufacturer's specifications and if it does not that SolarCity will repair or replace any defective part and restore System performance.

       (ii) **PowerGuide™ Solar Monitoring**

           During the Power Purchase Agreement Term, we will provide you at no additional cost our PowerGuide Solar Monitoring Service ("PowerGuide").  PowerGuide is a proprietary monitoring system designed and installed by SolarCity that captures and displays historical energy generation data over an Internet connection and consists of hardware located on



site and software hosted by SolarCity. If your System is not operating within normal ranges, PowerGuide will alert us and we will remedy any material issues promptly.

**(iv)    Output Warranty**

The System's rated electrical output during the first ten (10) years of the Power Purchase Agreement Term shall not decrease by more than fifteen percent (15%).

**(c)    Maintenance and Operation**

**(i)    General**

When the System is installed, SolarCity will provide you with a link to its Solar Operation Guide. This Guide provides you with System operation instructions, answers to frequently asked questions, troubleshooting tips and service information. SolarCity will perform all required System maintenance.

**(ii)    PowerGuide**

PowerGuide requires a high speed Internet line to operate. Therefore, during the Power Purchase Agreement Term, you agree to maintain the communication link between PowerGuide and the System and between PowerGuide and the Internet. You agree to maintain and make available, at your cost, a functioning indoor internet connection with a router, one DHCP enabled Ethernet port with internet access and standard AC power outlet close enough and free of interference to enable an internet-connected gateway provided by SolarCity to communicate wirelessly with the system's inverter (typically this is 80 feet, but may depend on site conditions). This communication link must be a 10/100 Mbps Ethernet connection that supports common Internet protocols (TCP/IP and DHCP). If you do not have and maintain a working high speed Internet line we will not be able to monitor the System and provide you with a performance guarantee or provide PowerGuide. Further, if PowerGuide is not operational, SolarCity will be required to estimate your power usage as set forth in the PPA.

**(d)    Making a Claim; Transferring this Warranty**

**(i)    Claims Process**

You can make a claim by:

A.   emailing us at the email address in Section 7 below;
B.   writing us a letter and sending it overnight mail with a well-known service; or
C.   sending us a fax at the number in Section 7 below.

**(ii)    Transferable Limited Warranty**

SolarCity will accept and honor any valid and properly submitted Warranty claim made during any Term by any person who either purchases the System from you or to whom you properly transfer the PPA.

**(e)    Exclusions and Disclaimer**

The limited warranties and guarantee provided in this Limited Warranty do not apply to any lost power production or any repair, replacement or correction required due to the following:

**(i)**    someone other than SolarCity or its approved service providers installed, removed, re-installed or repaired the System;

**(ii)**    destruction or damage to the System or its ability to safely produce power not caused by SolarCity or its approved service providers while servicing the System (e.g., if a tree falls on the System we will replace the System per the Power Purchase Agreement, but we will not repay you for power it did not produce);



DocuSign Envelope ID: A842F1E0-1385-4206-8E0C-6E9CEE32CB9E

(iii)    your failure to perform, or breach of, your obligations under the Power Purchase Agreement (e.g., you modify or alter the System);

(iv)    your breach of this Limited Warranty, including your being unavailable to provide access or assistance to us in diagnosing or repairing a problem;

(v)    any Force Majeure Event (as defined below);

(vi)    shading from foliage that is new growth or is not kept trimmed to its appearance on the date the System was installed;

(vii)    any system failure or lost production not caused by a System defect (e.g., the System is not producing power because it has been removed to make roof repairs or you have required us to locate the inverter in a non-shaded area);

(viii)    theft of the System (e.g., if the System is stolen we will replace the System per the Power Purchase Agreement, but we will not repay you for the power it did not produce);

(ix)    damage to your Home, belongings or property that results from our roof penetrations after the end of the Roof Warranty; and

(ix)    damage or loss to the System due to ball strikes.

This Limited Warranty gives you specific rights, and you may also have other rights which vary from state to state. This Limited Warranty does not warrant any specific electrical performance of the System other than that described above.

Snow or ice may accumulate on rooftops and on solar panels during snow storms. Accumulated snow or ice may slide or fall, resulting in property damage or bodily harm. If and when conditions safely allow you to remove accumulated snow or ice, you should do so to reduce the likelihood of excess snow sliding or falling.

THE LIMITED WARRANTIES DESCRIBED IN SECTIONS 2(a) ABOVE ARE THE ONLY EXPRESS WARRANTIES MADE BY SOLARCITY WITH RESPECT TO THE SYSTEM. SOLARCITY HEREBY DISCLAIMS, AND ANY BENEFICIARY OF THIS LIMITED WARRANTY HEREBY WAIVES, ANY WARRANTY WITH RESPECT TO ANY COST SAVINGS FROM USING THE SYSTEM.

## 3. SOLARCITY'S STANDARDS

For the purpose of this Limited Warranty the standards for our performance will be (i) normal professional standards of performance within the solar photovoltaic power generation industry in the relevant market; and (ii) Prudent Electrical Practices. "Prudent Electrical Practices" means those practices, as changed from time to time, that are engaged in or approved by a significant portion of the solar power electrical generation industry operating in the United States to operate electric equipment lawfully and with reasonable safety, dependability, efficiency and economy.

## 4. SYSTEM REPAIR, RELOCATION OR REMOVAL

(a)    **Repair**. You agree that if (i) the System needs any repairs that are not the responsibility of SolarCity under this Limited Warranty, (ii) the system needs to be removed and reinstalled to facilitate remodeling of your Home or (iii) the system is being relocated to another home you own pursuant to the Power Purchase Agreement, you will have SolarCity, or another similarly qualified service provider, at your expense, perform such repairs, removal and reinstallation, or relocation.

(b)    **Removal/Moving**. SolarCity will remove and replace the System from your roof while roof repairs are being made for a payment of $499. You will need to provide storage space for the System during such time. Where permitted under the PPA, SolarCity will work with you to move the System to your new home as follows: SolarCity will conduct an audit of your



DocuSign Envelope ID: A842F1E0-1385-4206-8E0C-6E9CEE32CB9E

existing Home and new home to determine if a move is commercially feasible. This audit will cost $499. If SolarCity determines that a move is commercially feasible, it will then move the System for an additional payment of $499. If we reinstall your System, the Roof Warranty will restart at the completion of reinstallation and run for ten (10) years from reinstallation.

(c)     **Return**. If at the end of the Term you want to return the System to SolarCity under Section 17 of the PPA then SolarCity will remove the System at no cost to you. SolarCity will remove the posts, waterproof the post area and return the roof as close as is reasonably possible to its original condition before the System was installed (e.g. ordinary wear and tear and color variances due to manufacturing changes are excepted). SolarCity will warrant the waterproofing for one (1) year after it removes the System. You agree to reasonably cooperate with SolarCity in removing the System including providing necessary space, access and storage, and we will reasonably cooperate with you to schedule removal in a time and manner that minimizes inconvenience to you.

## 5.   FORCE MAJEURE

If SolarCity is unable to perform all or some of its obligations under this Limited Warranty because of a Force Majeure Event, SolarCity will be excused from whatever performance is affected by the Force Majeure Event, provided that:

(a)     SolarCity, as soon as is reasonably practical, gives you notice describing the Force Majeure Event;

(b)     SolarCity's suspension of its obligations is of no greater scope and of no longer duration than is required by the Force Majeure Event (i.e., when a Force Majeure Event is over, we will make repairs); and

(c)     No SolarCity obligation that arose before the Force Majeure Event that could and should have been fully performed before such Force Majeure Event is excused as a result of such Force Majeure Event.

"Force Majeure Event" means any event, condition or circumstance beyond the control of and not caused by SolarCity's fault or negligence. It shall include, without limitation, failure or interruption of the production, delivery or acceptance of power due to: an act of god; war (declared or undeclared); sabotage; riot; insurrection; civil unrest or disturbance; military or guerilla action; terrorism; economic sanction or embargo; civil strike, work stoppage, slow-down, or lock-out; explosion; fire; earthquake; abnormal weather condition or actions of the elements; hurricane; flood; lightning; wind; drought; the binding order of any governmental authority (provided that such order has been resisted in good faith by all reasonable legal means); the failure to act on the part of any governmental authority (provided that such action has been timely requested and diligently pursued); unavailability of power from the utility grid, equipment, supplies or products (but not to the extent that any such availability of any of the foregoing results from SolarCity's failure to have exercised reasonable diligence); power or voltage surge caused by someone other than SolarCity including a grid supply voltage outside of the standard range specified by your utility; and failure of equipment not utilized by SolarCity or under its control.

## 6.   LIMITATIONS ON LIABILITY

(a)     **No Consequential Damages**

YOU MAY ONLY RECOVER DIRECT DAMAGES INCLUDING THOSE AMOUNTS DUE PURSUANT TO SECTIONS 2(b) AND 6(c) UNDER THIS LIMITED WARRANTY, AND IN NO EVENT SHALL SOLARCITY OR ITS AGENTS OR SUBCONTRACTORS BE LIABLE TO YOU OR YOUR ASSIGNS FOR SPECIAL, INDIRECT, PUNITIVE, EXEMPLARY, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY NATURE. SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

(b)     **Limitation of Duration of Implied Warranties**



DocuSign Envelope ID: A842F1E0-1385-4206-8E0C-6E9CEE32CB9E

ANY IMPLIED WARRANTIES, INCLUDING THE IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE AND MERCHANTABILITY ARISING UNDER STATE LAW, SHALL IN NO EVENT EXTEND PAST THE EXPIRATION OF ANY WARRANTY PERIOD IN THIS LIMITED WARRANTY.  SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

**(c)   Limit of Liability**

Notwithstanding any other provision of this Limited Warranty to the contrary, SolarCity's total liability arising out of relating to this Limited Warranty shall in no event:

(i)    For System Replacement:  exceed the greater of (a) the sum of the Monthly Payments over the Term of the Power Purchase Agreement and (b) the original cost of the System; and

(ii)   For damages to your Home, belongings and property:  exceed two million dollars ($2,000,000).

## 7.   NOTICES

All notices under this Limited Warranty shall be made in the same manner as set forth in the Power Purchase Agreement to the addresses listed below:

|  |  |
|---|---|
| **TO SOLARCITY:** | **SolarCity Corporation** |
| | **3055 Clearview Way** |
| | **San Mateo, CA  94402** |
| | **Attention:  Warranty Claims** |
| | **Telephone:  650-638-1028** |
| | **Facsimile:  650-638-1029** |
| | **Email: customercare@solarcity.com** |

**TO YOU:**          At the billing address in the Power Purchase Agreement or any subsequent billing address you give us.

## 8.   ASSIGNMENT AND TRANSFER OF THIS LIMITED WARRANTY

SolarCity may assign its rights or obligations under this Limited Warranty to a third party without your consent, provided that any assignment of SolarCity's obligations under this Limited Warranty shall be to a party professionally and financially qualified to perform such obligation.  This Limited Warranty protects only the person who hosts the System.  Your rights and obligations under this Limited Warranty will be automatically transferred to any person who purchases the System from you or to whom you properly transfer the Power Purchase Agreement. This Limited Warranty contains the parties' entire agreement regarding the limited warranty of the System

